IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:11-CV-00973-NJR-RJD |
| | ) |
| MARK HODGE, MARK STORM, JOSHUA SIMMS, ROBERT ADAMS, JERRY TANNER, WALTER MCCORMICK, TIMOTHY BRAKE, CHARLES ROUSH, CHAD RUCKER, RICHARD MARSHOFF, SHAYNE DOWNEN, KEVIN JOHNSON, JERROD CARTER, and BRADLEY AUSBROOK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Before the Court are the Motions for Summary Judgment filed by Defendants (Doc. 179) and by Plaintiff Larry Harris (Doc. 176). Harris is an inmate with the Illinois Department of Corrections. Defendants in this case are employees of the Illinois Department of Corrections. On October 31, 2011, Harris filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights (Doc. 1). Harris now proceeds on his Second Amended Complaint, which alleges the following claims:

**Count 1:** A First Amendment claim against Defendants McCormick, Carter, and Johnson for retaliating against Harris for the exercise of his constitutionally protected right to file grievances.

**Count 2:** A claim against Defendants Hodge, Downen, Simms, Storm, Adams, Tanner, Brake, Roush, Rucker, Marshoff, Ausbrook, McCormick, Johnson, and Carter for failing to allow Harris adequate time to eat his meals, amounting to cruel and unusual punishment in violation of the Eighth Amendment.

**Count 3:** A First Amendment claim against Defendants Hodge and Storm for acquiescing to the retaliatory conduct of various correctional officers.

**Count 4:** A First Amendment claim against Defendants Hodge and Storm for retaliating against Harris for the exercise of his constitutionally protected right to file lawsuits by transferring Harris from Lawrence Correctional Center to Menard Correctional Center.

Both Harris and Defendants seek summary judgment on all counts. For the following reasons, the Court denies Harris's Motion for Summary Judgment and grants Defendants' Motion for Summary Judgment on all counts.

## BACKGROUND

From December 8, 2009, to June 5, 2013, Harris was incarcerated at Lawrence Correctional Center ("Lawrence"), a medium security prison (Doc. 179-1 at 1). Defendant Hodge served as the warden and chief administrative officer at Lawrence, and Defendant Storm served as the assistant warden (Doc. 179-2 at 60). The remaining defendants served as correctional officers (*Id.* at 34).

At Lawrence, breakfast is delivered to the inmates' cells, but lunch and dinner are eaten at the prison chow hall. Harris chose not to eat breakfast (*Id.* at 15-16). For lunch and dinner, the policy at Lawrence was to allow inmates 10 minutes to eat their meal in the chow hall (*Id.* at 9). Inmates that receive special dietary meals, such as Harris, who has a soy-free diet, are placed in the back of the line. Harris intentionally placed himself

at the very end of the line behind other inmates with special diets (*Id.* at 21). At some point in 2010, Harris filed one or more grievances against Defendants McCormick, Carter, and Johnson regarding the amount of time he was allowed to eat (*Id.* at 45-46).

On the morning of October 17, 2011, Defendants McCormick, Carter, and Johnson went to Harris's cell and instructed Harris and his cellmate to remove their clothing except for underwear, t-shirts, and shower shoes (Doc. 179-2 at 39). The officers locked Harris and his cellmate in the shower cell (*Id.*). The officers then searched Harris's cell for two and a half hours for a makeshift heating device called a "stinger." (*Id.* at 44). The officers also instructed Harris and his cellmate to remove the rest of their clothing and bend over as they used a metal detector to check for contraband (*Id.* at 39). The officers found no contraband (*Id.* at 40).

From August 2012 to May 2013, Harris wrote down the time allowed for lunch and dinner, the attending officers, and the contents of the meal (*Id.* at 23; 176-1 at 91-96; Doc. 177 at 1-21). The actual time allowed fluctuated between 5 minutes and 20 minutes (Doc. 179-2 at 62). Harris supplemented his diet with additional food from the commissary, spending hundreds of dollars per month on such goods (Doc. 179-3). During his time at Lawrence, Harris's weight fluctuated from 205 pounds to 162 pounds (*Id.* at 63-64).

Harris filed several grievances related to the time he was allowed to eat and sent several letters regarding the issue to Defendants Storm and Hodge (Doc. 176-1 at 73-80, 83-90; Doc. 177 at 129-34). Harris also complained to Defendants Storm and Hodge of retaliation by correctional officers on four occasions:

- On January 7, 2013, Harris sent a letter to Defendant Storm and complained that correctional officers retaliated against him by singling him out, directing him to the front of the line in the chow hall, and instructing him to take a meal tray and sit down. Defendant Storm responded by directing the correctional officers to ensure that inmates were allowed the allotted time for meals (Doc. 176-1 at 80).

- On January 8, 2013, Harris sent a letter to Defendant Storm and complained that correctional officers retaliated against him by singling him out and directing him to the front of the line in the chow hall, allowing Harris ten minutes to eat, and saying "See, Harris, you got ten minutes." (*Id.* at 83).

- On May 24, 2013, Harris submitted an emergency grievance and complained that a correctional officer retaliated by searching him for a pen.[1] On May 30, 2013, Defendant Hodge responded that Harris's complaint did not constitute an emergency and instructed Harris to submit a grievance in the normal manner (Doc. 177 at 138).

- On June 1, 2013, Harris submitted an emergency grievance and complained that a correctional officer retaliated against him by tampering with his legal mail. On June 11, 2013, Defendant Hodge responded that Harris's complaint did not constitute an emergency and instructed Harris to submit a grievance in the normal manner (Doc. 177 at 140-41).

On June 5, 2013, Harris was transferred from Lawrence to Centralia Correctional Center ("Centralia") on a court writ for the case *Harris v. Ryker, et al.*, 3:11-cv-00134-SCW in this federal district court. Two days later, on June 7, 2013, Defendant Hodge approved and signed a transfer report to transfer Harris to Menard Correctional Center, a maximum security prison (Doc. 179-4 at 8-9). The instant lawsuit against Defendants Storm and Hodge was also pending at the time of his transfer. According to Defendants,

---

[1] The grievance form states that emergency grievances are intended for "substantial risks of imminent personal injury or other serious or irreparable harm to self." (Doc. 177 at 139.)

Harris was transferred, along with 39 other inmates, because of a lack of bed space in IDOC medium security facilities. Harris was incarcerated at Menard Correctional Center from June 2013 to April 2016 (Docs. 73, 163).

## ANALYSIS

I.  **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment against Harris on all four counts. Federal Rule of Civil Procedure 56(a) states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When faced with a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

    A.  **Count 2—Eighth Amendment Claim of Inadequate Time Allowed for Meals**

Harris claims that Defendants' refusal to allow him adequate time for meals violated his Eighth Amendment rights. Defendants argue that Harris fails to demonstrate an Eighth Amendment violation because he was provided with an adequately nutritious diet.

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Lunsford v. Bennett*, 17 F.3d 1574,

1580 (7th Cir. 1994). The Eighth Amendment requires that prisoners be provided a diet of adequate nutrition. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). However, "prison officials cannot be held liable under the Eighth Amendment unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

Harris specifically alleges that inmates have the constitutional right to 15 minutes per meal. (Doc. 92 at 7; Doc. 176 at 1.) For this proposition, Harris cites to *Stewart v. Gates*, 450 F. Supp. 583 (C.D. Cal. 1978), and *Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978). Significantly, these opinions are not binding on this Court. *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("[D]istrict judges in this circuit must not treat decisions by other district judges, in this and *a fortiori* in other circuits, as controlling"). Notably, the cited opinions omit the evidentiary basis and legal reasoning underlying the 15-minute requirement. Because Eighth Amendment claims turn on the specific facts and circumstances of each case, the Court declines to adopt the conclusions set forth in the cited opinions. *See Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) ("[The objective analysis] is necessarily a difficult and imprecise contextual inquiry.") Furthermore, neither the Seventh Circuit nor the Supreme Court has held that the Constitution mandates a specific duration for prisoner meals.

The Court finds that the proper focus is on whether the record demonstrates that the time allowed for meals deprived Harris of an adequately nutritious diet. Even assuming that Harris's weight decreased and that a low volume of food consumed by

Harris caused his weight loss, Harris chose not to eat the breakfast meals served to him in his cell. Harris also admits that he spent a portion of his mealtime writing down notes. Harris further shortened his mealtimes by intentionally placing himself at the very end of the line. As a result, Harris cannot demonstrate that the amount of time he was permitted to eat lunch and dinner—rather than his own voluntary conduct—deprived him of an adequately nutritious diet.

Viewing the record in the light most favorable to Harris, the Court concludes that Harris has not shown that the time allowed for meals deprived him of an adequately nutritious diet, and his claim under the Eighth Amendment fails. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Count II of Harris's Second Amended Complaint.

B.   Counts 1, 3, and 4—First Amendment Claims of Retaliation

Harris's remaining counts consist of three separate claims of First Amendment retaliation. Defendants argue that Harris lacks evidence that First Amendment activity motivated Defendants' alleged conduct and that the transfer to higher security correctional facility would have happened anyway.

To establish a *prima facie* case of retaliation, Harris must demonstrate that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). If Harris establishes a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate that

"[their] conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).

### 1. *Count 1—October 17, 2011 Search*

Harris alleges that Defendants McCormick, Carter, and Johnson searched his cell and person in retaliation for the grievances filed against them for not allowing him additional time for meals. The evidence supporting his claim that First Amendment activity motivated the search at issue consists solely of Harris's testimony that he filed grievances against Defendants McCormick, Carter, and Johnson. Harris makes no further effort to tie the search to the grievances and apparently relies on timing alone.

The filing of prison grievances and exercising the right of access to the courts are both protected activities, and a humiliating, non-routine prisoner search is an event that could deter future First Amendment activity. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). One method of proving retaliation is to "to allege a chronology of events from which retaliation may be inferred." *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). However, "in the prison context, suspicious timing is not enough to overcome uncontradicted evidence of other, non-retaliatory motives." *Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010).

Here, Harris has presented no evidence to indicate that his grievances filed "all the way back to 2010" motivated the October 17, 2011 search, and grievances filed at least a year prior to the alleged conduct are insufficient to create an inference of retaliation. While Harris argues that the search was not a scheduled search in accordance with Lawrence policy and occurred only 13 days after the standard monthly search, a

violation of state regulations is not by itself actionable under 42 U.S.C. § 1983. *Tenny v. Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011); *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). Furthermore, Harris testified in his deposition that the October 17, 2011 search occurred because Defendants suspected him of having contraband in the form of a "stinger" in his cell (Doc. 179-2, p. 44).

Because the record before the Court contains no evidence to support Harris's claim that his grievances motivated the October 17, 2011 search, and because there is evidence that Defendants had a non-retaliatory motive in that they were searching for a stinger, Harris's claim against Defendants McCormick, Carter, and Johnson fails. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Count 1 of Harris's Second Amended Complaint.

### 2. *Count 3—Acquiescence to Retaliatory Conduct*

In Count 3, Harris alleges that Defendants Hodge and Storm violated his First Amendment rights by acquiescing to the retaliatory conduct of various correctional officers. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id.* "That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

The record contains four instances in which Harris notified Defendants Hodge

and Storm of alleged retaliation. In January 2013, Harris sent two letters to Defendant Storm, alleging correctional officers retaliated against him by singling him out and placing him at the front of the chow hall line. Even assuming that this conduct was retaliatory rather than a remedy to Harris's grievances, Defendant Storm responded by instructing correctional officers to allow Harris the full allotment of time for his meals. Harris admits that he received the allotted 10 minutes after the instruction was given, if only for a few days (Doc. 179-2 at 61-62).

In May and June 2013, Harris submitted two emergency grievances complaining of retaliation. Defendant Hodge found that Harris's complaints did not constitute an emergency and instructed Harris to file grievances in the normal manner. Considering that Harris's grievances did not describe an emergency—defined by the grievance form as a substantial risk of personal injury—Defendant Hodge's response was appropriate.

Because Defendants Storm and Hodge adequately responded when Harris complained of retaliatory conduct, Harris's claim of acquiescing to retaliation against Defendants Storm and Hodge fails. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Count 3.

### 3. *Count 4—Facility Transfer*

Finally, Harris alleges that Defendants Hodge and Storm violated his First Amendment rights by transferring him from a medium security prison to a maximum security prison in retaliation for his lawsuits (Doc. 92 at 8-9). Defendants argue that Harris has not offered any evidence of a causal connection between his pending lawsuits and Defendants' alleged actions. The record indicates that Defendant Hodge approved

Harris's transfer to Menard Correctional Center, but no evidence suggests that Defendant Storm was personally involved with the transfer. With regard to this lawsuit and the *Harris v. Ryker* case, both of which were pending at the time of his transfer, Harris apparently relies on timing alone and offers no other evidence to support his claim that the lawsuits motivated Defendant Hodge to approve the transfer.

For suspicious timing to raise an inference of causation, "[t]he adverse action must follow close on the heels of the protected expression, and the plaintiff must show that the person who took the adverse action knew of the protected conduct." *Ollie v. Hodge*, No. 13-CV-1181, 2015 WL 8481679, *10 (S.D. Ill. 2015); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Significantly, Harris had commenced both *Harris v. Ryker* and this action nearly two years prior to the transfer at issue. Defendant Hodge was notified of this lawsuit by service as of January 2013 – more than 5 months before the transfer was approved. Thus, the timing alone is insufficient to raise an inference of causation. *Kidwell*, 679 F.3d at 966 ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action.").

Harris also complains of a handwritten note on his transfer papers stating that he "has [a] lawsuit against Major Schwartz at CEN while he was Acting Warden at PNK." Even if this note regarding another of Harris's lawsuits was enough to allow Harris to meet his initial burden with respect to his retaliation claim, the question then becomes whether "events would have transpired differently absent the retaliatory motive." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Here, Harris would have been

transferred regardless of any retaliatory motive. The IDOC Transfer Coordinator's Office directed Lawrence to submit the names of 40 inmates for transfer to Menard so that other inmates could be moved to Lawrence due to a lack of bed space in the medium security facilities (Doc. 179-1, p. 2). Defendant Hodge did not determine who would be transferred; rather, the decision was left to the Clinical Services and Intelligence departments, which submitted the names of inmates who met the criteria for transfer (*Id.*).

Because the record contains insufficient evidence to demonstrate that Harris's lawsuits against Defendants Storm and Hodge motivated the transfer, and because Defendants have provided evidence that the transfer would have occurred regardless of any retaliatory motive on behalf of Defendants, Harris's claim of retaliation fails. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Count 4.

## II.     HARRIS'S MOTION FOR SUMMARY JUDGMENT

Harris moves for summary judgment against Defendants on all four counts. As discussed above, even when the evidence is viewed in a light most favorable to Harris, Defendants are entitled to summary judgment. Accordingly, Harris's Motion for Summary Judgment is denied.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 178) and **DENIES** Harris's Motion for Summary Judgment (Doc. 176). Accordingly, Defendants Hodge, Downen, Simms, Storm, Adams, Tanner, Brake, Roush, Rucker, Marshoff, Ausbrook, McCormick, Johnson, and Carter are **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:** November 4, 2016

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**